# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROGER ALLEN RAY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:15-cv-01041-JEO |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Plaintiff Roger Allen Ray ("Ray" or "the claimant") brings this action seeking judicial review of a final adverse decision of the Acting Commissioner of the Social Security Administration ("the Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). (Doc.[1] 1). This court has carefully considered the record, and for the reasons stated below, finds that the decision of the Commissioner is due to be affirmed.

## **I. PROCEDURAL HISTORY**

Ray filed for a period of disability, DIB, and SSI on December 26, 2013,

---

[1] References herein to "Doc(s).__" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

1

alleging disability beginning October 3, 2013. (R.[2] 165-72). The Social Security Administration initially denied his claim on April 10, 2014. (R. 96). He then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 110). Ray, his counsel, and a Vocational Expert ("VE") appeared at the hearing. (R. 28-61). Following the hearing, the ALJ found that Ray was not disabled within the meaning of the Social Security Act and was not entitled to DIB and SSI. (R. 23).

Ray requested the Appeals Council to review the ALJ's decision. (R. 5). The Appeals Council denied his request. (R. 1-3). Therefore, the ALJ's decision represents the final decision of the Commissioner. (*Id.* at 1). Ray timely filed this action for judicial review, asserting that the Commissioner erred as a matter of law in determining that he is not entitled to DIB and SSI and that the Commissioner's decision is not supported by substantial evidence. (Doc. 1 at 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is

---

[2] References herein to "R.__" are to the page numbers of the administrative record, which is located at Docs. 7-1 through 7-8.

reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB or SSI based on a disability, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i); 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(C).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.' " *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV.  DISCUSSION

### A.  The Facts

#### 1.  Background

Ray was 53 years old when he filed his claim for DIB and SSI.  He has past relevant work experience as a flooring installer and dispatcher. (R. 22).  In his disability report, he identified numerous medical conditions that limited his ability to work, including degenerative disk and bone disease, arthritis, spinal stenosis, bone spurs in his neck, mitral valve prolapse, high blood pressure, high cholesterol, and anxiety disorder. (R. 187).  He last worked in 2011, when he was laid off from his job as a dispatcher. (R. 188).  He alleged a disability onset date of October 3, 2013. (R. 12, 165, 167).

At the hearing before the ALJ, Ray testified that since October 2013, the pain in his lower back and upper neck has made it "almost impossible" for him to do any sort of task for more than a few minutes.  (R. 35).  He stated that he cannot stand or walk for more than three hours a day, cannot sit for more than three hours a day, can sit for only 15 to 20 minutes at a time, and cannot lift more than five pounds.  (R. 48-49).  He rated his daily pain at a seven out of ten, even with medication.  (R. 50-51).  Ray testified that he deals with his pain by lying down about two hours a day.  (R. 54).  Despite his pain, he performs some household chores, shops for groceries, and plays guitar for ten minutes twice a week.  (R. 37-

40).

### 2. ALJ Findings

The ALJ found that Ray has the "severe" physical impairments of spurring and stenosis of the cervical spine, spinal stenosis and disk protrusion in the lumbar spine, and degenerative joint disease/osteoarthritis. (R. 14). She concluded, however, that Ray's impairments, alone and in combination, did not meet or medically equal the severity of one of the listed impairments in the Listings.[3] (R. 18).

The ALJ then found that Ray has the residual functional capacity[4] ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour day; and sit eight hours in an eight-hour day. (R. 18). She further found that Ray can never climb a ladder, rope, or scaffolding and can only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. (*Id.*) Premised on the testimony of the VE, the ALJ found that Ray was capable of performing his past relevant work as a dispatcher, which the VE identified as light work. (R. 22, 55). She thus concluded that Ray was not disabled from October 3, 2013, through the date of her decision. (R. 23).

---

[3] The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Residual functional capacity is the most a claimant can do despite his impairment(s). *See* 20 C.F.R. §404.1545(a)(1).

**B.     Analysis**

Ray argues that the Commissioner's decision should be reversed and remanded for two reasons.  First, he argues that the ALJ failed to properly evaluate the credibility of his complaints of pain consistent with the Eleventh Circuit's pain standard.  Second, he argues that the ALJ failed to articulate good cause for according only "little weight" to the opinion of his treating physician, Dr. Jeffrey Davidson.  The court will address each argument in turn.

**1.     Ray's Credibility**

When a claimant asserts disability premised on pain or other subjective symptoms, he or she must present evidence to support the Eleventh Circuit's pain standard:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence confirming the severity of the alleged pain or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Foote*, 67 F.3d at 1560.  Applying this standard, Chief United States District Judge Karon O. Bowdre has stated:

> If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision.  *See* [*Foote*], [67 F.3d] at 1561-62.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Id.* at 1562.  The ALJ's credibility determination

7

> need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (citing *Foote*, 67 F.3d at 1561).

*Siquina v. Colvin*, Case No. 3:11-cv-3269-KOB, 2013 WL 5521156, *6 (N.D. Ala. Sept. 30, 2013).

Here, the ALJ found that Ray's "medically determinable impairments could reasonably be expected to cause some symptoms." (R. 22). She determined, however, that Ray's "alleged difficulties and restrictions, when compared to the objective medical evidence, the physical examinations, and his demonstrated ability, indicate that [he] has overstated the severity of his symptomology resulting from his underlying impairments." (R. 19-20). Ray challenges this assessment of his credibility, arguing that the ALJ's determination is not supported by substantial evidence and that the ALJ failed to properly consider the progressive nature of his conditions and the entirety of the medical evidence within the record. (Doc. 11 at 6-9). The Commissioner retorts that the ALJ's determination of Ray's credibility is supported by substantial evidence. (Doc. 12 at 8). The court agrees with the Commissioner.

In support of his contention that the ALJ ignored the progressive nature of his conditions, Ray points to his spinal stenosis and degenerative disc disease. Ray was first diagnosed with spinal stenosis and degenerative disc disease in 2003. (R. 14, 255). The record reflects that an MRI of Ray's spine was taken on October 10,

2003, and that Dr. Daniel Thompson interpreted the MRI as showing moderately severe spinal stenosis at L4-L5; changes at the L5-S1 disc that were likely degenerative; and mild disc protrusion at L5-S1.  (*Id.*)  Ray argues that the ALJ failed to consider "the high likelihood that [his] spinal stenosis and degenerative disc disease worsened over the years" and that he "undoubtedly suffers from significant back pain which limits him to sedentary work, at best." (Doc. 11 at 7-8).  Even assuming that Ray's spinal stenosis and degenerative disc disease did worsen over time, substantial evidence supports the ALJ's determination that Ray has overstated the severity of his symptoms resulting from these impairments.

The ALJ noted in her decision that Ray "continued to perform substantial gainful activity [at] the light exertional level for numerous years" after his back problems were initially diagnosed in 2003. (R. 19).  She also noted that "the various physical examinations within the record indicate no substantial restriction to [Ray's] ability to ambulate, or perform work-related tasks." (R. 20).  The ALJ summarized the medical evidence as follows:

> The claimant underwent a physical examination conducted by Dr. Davidson on October 3, 2013 (the alleged onset date).  Dr. Davidson noted that the claimant was doing well and had no current complaints. … Dr. Davidson reported that the claimant had no spinal tenderness or misalignment, his leg raising was negative, and no CVA tenderness was noted.
>
> Moreover, the claimant underwent a consultative physical examination conducted by Ammar Aldaher, M.D., on April 2, 2014. … [The claimant] had no edema, clubbing, or stenosis in the

9

> extremities.  His range of motion in the upper and lower extremities was within normal limits.  Dr. Aldaher related that the claimant had no abnormality of range of motion in the lumbosacral area.  In fact, Dr. Aldaher observed that the claimant's gait was normal without ataxia or spasticity.  The claimant had no muscle weakness, normal reflexes, and a normal grip.  His seated leg raising was negative.  Dr. Aldaher opined that the claimant would be able to do work-related activities, such as sitting, standing, walking, lifting, carrying, and handling objects.
>
> …
>
> The physical examination conducted by Dr. Mullen[s] on August 22, 2014, also support[s] the findings and opinions of Dr. Aldaher's physical examination. … Dr. Mullen[s's] examination revealed that the claimant had no substantial musculoskeletal difficulties.  Dr. Mullen[s] reported the claimant had a normal full range of motion of all joints without clubbing, cyanosis, edema, or deformity.  He noted the claimant had normal muscular tone for his age. … Moreover, the claimant subsequently underwent an exercise stress test on August 25, 2014, without noted difficulty.
>
> Furthermore, during a follow-up on October 30, 2014, Dr. Davidson again noted that the claimant was doing well with no current complaints.  Additionally, the claimant denied having any limitation of motion.  In fact, Dr. Davidson's physical examination of the claimant was ostensibly normal.  The claimant had no spinal tenderness or misalignment.  His leg raising test was negative, and no CVA tenderness was noted.  The claimant's range of motion with the spine was normal.  Moreover, Dr. Davidson observed that the claimant's gait was normal and the claimant was able to stand without difficulty.

(R. 20-21 (exhibit citations omitted); *see* R. 276, 302-303, 331-39, 355-58).  All of this medical evidence provides substantial support for the ALJ's decision to discredit Ray's testimony regarding the severity of his symptoms and belies his assertion that the ALJ failed to consider the entirety of the medical evidence in the

record.

Ray also argues that the ALJ erroneously relied on "isolated inconsistencies" in the record to support her negative credibility finding. (Doc. 11 at 7). Specifically, Ray cites the ALJ's observation that although "the claimant testified [at the hearing] that he had not exercised during the summer of 2014 … Dr. Mullens documented, during his cardiac evaluation [in August 2014], that the claimant exercised." (R. 20). Ray argues that the ALJ's "reliance upon one notation in the record that was 'inconsistent' with [his] testimony is irrational and not supported by substantial evidence." (Doc. 11 at 7).

An ALJ "is entitled to consider inconsistencies between a claimant's testimony and the evidence of record." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001). That is what the ALJ did here. Moreover, Ray's suggestion that the ALJ relied on a single inconsistency to discredit his testimony is unfounded. The inconsistency between Ray's testimony and the evidence of record regarding whether he exercised in 2014 was simply one of many reasons cited by the ALJ in support of her negative credibility finding. (*See* R. 20-22). For example, the ALJ observed that Ray was able to sit throughout the entire hour-long hearing despite his assertion that he was capable of sitting for only 10 to 15 minutes at a time and despite being advised that he could stand if he needed to. (R. 20). She also observed that Ray was able to testify and answer questions with little

difficulty, even though he claimed to be experiencing a pain level of seven on a zero-to-ten point scale. (*Id.*) Such observations are appropriate considerations in making a credibility determination. *See* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *8 (July 2, 1996) (noting that the ALJ "should consider any personal observations in the overall evaluation of the credibility of the individual's statements")[5]; *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) ("an ALJ may consider the claimant's demeanor among other criteria in making credibility determinations"). The ALJ also cited all of the medical evidence discussed above.

In sum, notwithstanding Ray's assertions to the contrary, the ALJ considered the entirety of the record in evaluating his testimony regarding the severity of his symptoms. She gave "explicit and adequate reasons" for deciding not to credit his testimony. *Foote*, 67 F.3d at 1561. Accordingly, the court finds that the ALJ properly applied the Eleventh Circuit's pain standard and that her decision to discredit Ray's testimony is "reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.

### 2. Dr. Davidson's Opinion

As noted above, Ray's treating physician, Dr. Davidson, examined Ray on

---

[5] SSR 96-7p, which was in effect when the ALJ issued her decision, has been superseded by SSR 16-3p effective March 28, 2016. SSR 16-3p eliminates the use of the term "credibility" and instead provides that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016).

October 30, 2014. (R. 355-58). That same day, Dr. Davidson completed a "check-box" form titled "Non-Exertional Factors Affecting Your Patient."[6] (R. 353). Dr. Davidson opined that Ray suffers from "moderately severe" pain that "[c]ould be tolerated but would cause some handicap in the performance of the activity precipitating the pain." (*Id.*) He indicated that Ray would need frequent rest periods during the day to relieve the pain and would likely have to miss three or more days per month from work. (*Id.*) He also indicated that there might be "possible side effects" from Ray's medications. (*Id.*)

The ALJ acknowledged the opinions expressed by Dr. Davidson on the check-box form, but gave those opinions "little weight." (R. 21). Ray argues that the ALJ erred in according Dr. Davidson's opinions only "little weight" and that she failed to articulate good cause for doing so. (Doc. 11 at 9-10). The court does not agree.

The opinion of a treating physician such as Dr. Davidson "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v.*

---

[6] The origin of the form is not apparent from the record.

*Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [her] reasons." *Id.*

Here, the ALJ clearly and thoroughly articulated her reasons for according little weight to the opinions expressed by Dr. Davidson on the check-box form:

> Dr. Davidson's opinions contained within this form are not consistent with the claimant's longitudinal treatment history or even Dr. Davidson's own findings. Dr. Davidson's physical examination of the claimant on October 30, 2014, was ostensibly normal. The claimant had no spinal tenderness or misalignment. The claimant's leg raising test was negative, and no CVA tenderness was noted. The claimant's range of motion with the spine was normal. Moreover, Dr. Davidson observed that the claimant's gait was normal and the claimant was able to stand without difficulty. Therefore, I give the check box form little weight.
>
> Dr. Davidson's written observations are significantly different than Dr. Davidson's opinions noted in the check box sheet[ ]. In the check box sheet[ ], Dr. Davidson related that the claimant would need frequent rest period[s] during the day to walk about or to lie down to relieve pain. Yet, Dr. Davidson's own examination does not reflect that the claimant experiences a significant level of pain. Dr. Davidson's check box opinions note that the claimant had possible side effects from medication. On the other hand, the clinical notes are devoid of the claimant's complaining of any side effects. In the check sheet form, Dr. Davidson opined that the claimant would likely miss three or more days of work per month due to his medical condition, attendant limitations, pain, and/or side effects of the medications. However, this opinion is not supported by any of the treating source records, including the medical records for the claimant's visit on the same date that the check box form was filled out. Therefore, I afford [sic] the opinions Dr. Davidson contained within this form minimal weight.

(R. 21-22 (exhibit citations omitted)). These reasons demonstrate good cause for

14

discounting the opinions of Dr. Davidson reflected on the check-box form.

Dr. Davidson's opinions on the check-box form are also inconsistent with Dr. Aldaher's findings from April 2, 2014, and Dr. Mullens's findings from August 25, 2014. (R. 302-304). Dr. Aldaher observed that Ray had a normal range of motion in his spine and extremities and no muscle weakness, a normal grip, and a normal gait. (R. 303). Dr. Mullens noted no signs of pain beyond shortness of breath when Ray performed his exercise stress test. (R. 331). These findings provide further support for according little weight to the opinions expressed by Dr. Davidson on the check-box form.

## V.  CONCLUSION

Based on the foregoing, the court finds that substantial evidence supports the Commissioner's decision and that the decision is due to be **AFFIRMED**.

**DATED**, this 7th day of September, 2016.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge